UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHEN FRIEND,
Plaintiff,
v. Case No.: ________________

KASHYAP PATEL, in his official capacity as Director of the Federal Bureau of Investigation,
Defendant.
__________________________________/

## COMPLAINT

Plaintiff, STEPHEN FRIEND, through undersigned counsel, brings this action against Defendant, KASHYAP PATEL, in his official capacity as Director of the Federal Bureau of Investigation, and alleges:

## INTRODUCTION

FBI Director Kash Patel unlawfully terminated FBI Special Agent Stephen Friend for speaking publicly in his capacity as a citizen about an important, publicly known, and widely debated federal investigation.

Stephen Friend's podcast appearances and public commentary were outside his assigned investigative duties. He was not delivering an official FBI report, carrying out an assigned communication, or speaking on the agency's behalf. The public setting and context made clear that he was expressing his own personal views, rather than communicating an official FBI position. His commentary concerned the FBI's investigation of the January 6, 2021 pipe bombs, the handling of evidence, and the accountability of federal law enforcement—matters of substantial public concern.

Patel nevertheless personally signed a letter removing Friend from federal service that expressly identified his podcast appearances, media interactions, and public commentary as grounds for dismissal. The challenged retaliation extended beyond a single passage: Patel relied on Friend's broader public discussion and criticism of the investigation to justify removing him. Patel punished constitutionally protected citizen speech by falsely labeling it "unprofessional conduct and poor judgment." Plaintiff seeks relief setting aside that unconstitutional removal, restoring his employment and personnel records, recovering compensation and benefits legally due, and awarding attorney's fees and expenses under the Equal Access to Justice Act and other applicable authority.

## I. PARTIES

1. Plaintiff Stephen M. Friend is a former FBI Special Agent whose geographical assignment under an August 26, 2025 settlement agreement with the Department of Justice was the Jacksonville Field Office, Daytona Beach Resident Agency.
2. Defendant Kashyap P. Patel is the Director of the Federal Bureau of Investigation and held that position when he signed the challenged removal decision.
3. Patel personally signed the December 12, 2025 letter directing Friend's immediate dismissal from the FBI and removal from federal service.

4. Patel is sued solely in his official capacity for relief concerning the challenged removal and its employment, compensation, benefits, and personnel-record consequences.

## II. JURISDICTION AND VENUE

5. Plaintiff invokes federal-question jurisdiction under 28 U.S.C. § 1331 because this action presents a claim arising under the First Amendment to the United States Constitution.

6. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201–2202 and injunctive relief under the Court's equitable authority to remedy unconstitutional action by federal officials. The Declaratory Judgment Act supplies a remedy rather than an independent basis for jurisdiction.

7. Plaintiff invokes the waiver of sovereign immunity in 5 U.S.C. § 702 for the requested relief other than money damages, subject to that provision's limitations and any applicable statutory restriction on judicial review.

8. Plaintiff seeks back pay and associated relief under the Back Pay Act, 5 U.S.C. § 5596, to the extent its requirements are satisfied and this Court has jurisdiction to award that relief. Plaintiff does not contend that § 702 alone authorizes every requested monetary remedy.

9. Plaintiff relies on the principle that discretionary federal employment authority does not, by itself, eliminate judicial consideration of a colorable constitutional challenge. See *Webster v. Doe*, 486 U.S. 592, 603–05 (1988).

10. Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events giving rise to this action occurred here,

including Friend's return to FBI facilities and delivery of the removal notice at the Daytona Beach Resident Agency.

11. The Orlando Division is the appropriate division because Daytona Beach is located in Volusia County.

## III. FACTUAL ALLEGATIONS

### A. Friend's FBI Service and Prior Whistleblower Dispute

13. Friend joined the FBI as a new agent trainee in June 2014.

14. After graduating from the FBI's training academy at Quantico, Friend served in the Omaha Division's Sioux City Resident Agency, investigating violent crimes and major offenses occurring in Indian Country.

15. Friend also served on the Omaha SWAT Team and performed acting supervisory responsibilities.

16. In June 2021, Friend transferred to the Jacksonville Field Office's Daytona Beach Resident Agency, where he was assigned to investigate child exploitation and human trafficking.

17. In October 2021, Friend was reassigned to the Joint Terrorism Task Force and instructed to concentrate on domestic terrorism investigations.

18. Friend was suspended from duty on September 19, 2022, and resigned in February 2023. His declaration attributes those events to retaliation for protected whistleblower activity.

19. During 2025, Friend's attorneys advised him that Patel and then-Deputy Director Dan Bongino were communicating with Senator Charles Grassley concerning Friend's reinstatement.

20. According to information communicated to Friend by his attorneys, FBI leadership referred to purported character issues and expressed reluctance to reinstate him because of his public criticism of the agency.

21. Friend states that a review of his personnel file disclosed no documented character issues of the kind described to his attorneys.

**B. The Reinstatement Agreement and Return to FBI Facilities**

22. On August 26, 2025, the Department of Justice entered into a settlement agreement concerning Friend's reinstatement.

23. As quoted in Friend's declaration, the agreement provided for reinstatement as a Special Agent effective September 19, 2022, within thirty days of the agreement's effective date, into a position mutually agreeable to the parties.

24. The quoted provision designated the Jacksonville Field Office, Daytona Beach Resident Agency, as Friend's geographical assignment and provided for the grade and step he would have held had he never resigned.

25. Patel's dismissal letter states that Friend was reinstated in a paid duty status on September 21, 2025.

26. On December 7, 2025, a Jacksonville Division Assistant Special Agent in Charge instructed Friend to report the following day.

27. The Assistant Special Agent in Charge advised Friend that his security-clearance background check remained incomplete and that the Jacksonville Division could not provide him with a firearm, computer access, an email address, or unaccompanied facility access.

28. Friend reported to the Jacksonville Division Office on December 8 and 9, 2025. He states that he remained under escort inside FBI facilities and performed no actual work or duties.

29. On December 10, 2025, Friend was informed that his restored annual leave and sick leave balances were 420 hours and 1,200 hours, respectively.

30. Friend also met with an Assistant Special Agent in Charge at the Daytona Beach Resident Agency concerning his time records and leave.

**C. The Public Commentary Identified as Grounds for Removal**

32. The speech identified in Patel's dismissal letter concerned an important, publicly known federal investigation: the FBI's investigation of two pipe bombs discovered near the United States Capitol on January 6, 2021. Friend's commentary addressed the investigation, the agency's handling of evidence, and the accountability of federal law enforcement.

33. Friend spoke publicly through podcast appearances, commentary, and dissemination of media materials. He participated in that public discussion in his personal capacity, outside his assigned investigative duties, rather than through an official report, an internal work assignment, or an authorized statement on behalf of the FBI.

34. Patel's letter alleges that, beginning in October 2025, Friend disseminated media sources concerning the investigation and appeared on a podcast discussing it.

35. The letter further alleges that, in November 2025, Friend publicly questioned whether the FBI was deliberately withholding evidence and disseminated media sources and photographs identifying an alleged subject.

36. Plaintiff identifies these statements as Defendant's stated reasons for removal. Plaintiff does not adopt every factual characterization in the dismissal letter as accurate merely by describing or attaching it.

37. The letter also identifies a December 5, 2025 podcast appearance discussing the FBI's recent arrest of the pipe-bomb subject.

38. According to the letter, Friend introduced the quoted remarks conditionally, referring to the possibility that the FBI had engaged in a "put up job" concerning that subject.

39. The letter reproduces the following passage:

> "May God have mercy on your soul, and I'm gonna end with this. I'm going to bring out my inner Commodus. You better pray to Gaia, Vishnu or whatever your maker is that RealSteveFriend is never in a position to be an instrument of God's wrath, because I will be merciful. I'll allow you to breathe every breath that your body will have for the rest of its natural life inside of a box, and then when it ultimately fades to black, that's when the real wrath begins."

40. This statement, completely divested from its context, was disingenuously and falsely purported to be a "threat" by Patel.

41. The subjects of the commentary—the investigation of explosives near the Capitol, the handling of evidence, and the integrity of federal law

enforcement—concern matters of substantial public importance beyond Friend's personal employment dispute.

42. Friend's public commentary was not made pursuant to his assigned duties. He was not tasked with providing the podcast commentary, was not acting as an FBI spokesperson, and did not present his views as an official agency position. The form and context of the public appearances made clear that he was expressing personal views; a reasonable listener would not have understood those remarks as an authorized communication on behalf of the FBI. The dismissal letter itself describes the appearances as unauthorized and states that Friend lacked knowledge of the details or status of the ongoing investigation.

43. The dismissal letter does not identify a particular classified document or classified fact that Friend disclosed. Its stated grounds focus on media interactions, public commentary, dissemination of media sources, and asserted deficiencies in professionalism and judgment.

**D. Patel Personally Ordered Friend's Removal**

44. On December 12, 2025, at approximately 5:24 p.m., an Assistant Special Agent in Charge contacted Friend about appearing at the Daytona Beach Resident Agency to sign security-clearance paperwork.

45. Friend was away from the geographical area and could not appear as requested. He was advised that he could complete the paperwork on Monday, December 15, 2025.

46. Later that evening, a New York Post reporter contacted Friend concerning his podcast remarks and reporting suggesting that the remarks had placed his FBI employment in jeopardy. Friend did not respond.

47. On the morning of Saturday, December 13, 2025, an Assistant Special Agent in Charge again contacted Friend and requested a meeting at the Daytona Beach Resident Agency concerning security-clearance paperwork.

48. Friend appeared at approximately noon and met with the Assistant Special Agent in Charge and the Jacksonville Division Special Agent in Charge.

49. At that meeting, Friend received the dismissal letter personally signed by Patel, dated December 12, 2025, and directing his immediate removal. A copy is attached as **Exhibit 1**.

50. The letter expressly identified Friend's media interactions, public dissemination of media sources, comments about FBI matters and ongoing investigations, and podcast appearances as grounds for removal.

51. Patel characterized the identified statements and activities as unprofessional conduct and poor judgment.

52. Patel invoked Article II of the United States Constitution and federal law as authority for terminating Friend's employment.

53. The letter advised that, if applicable, Friend could appeal the removal to the Merit Systems Protection Board within thirty days of its effective date.

54. Patel's participation was direct. He personally signed the decision ordering the removal and identifying the public commentary as grounds for that action.

55. Friend alleges that Patel punished him for the protected portions of his general public commentary on podcasts and elsewhere concerning the investigation and the agency's conduct. Patel's stated grounds extended beyond the December 5, 2025 passage and expressly included earlier podcast appearances, media interactions, dissemination of media materials, and public criticism. Friend's protected speech was a substantial or motivating factor in the removal, and the descriptions of unprofessional conduct and poor judgment were used to justify retaliation against that speech.

**E. Subsequent Personnel Records and Payment**

56. On January 15, 2026, Friend received a January 8, 2026 letter from the FBI Security Division stating that a prior security-clearance action had been rescinded and that he had been debriefed from his security clearance.

57. On January 30, 2026, Friend received a direct deposit of $163,674.40. His declaration states that he had not received an explanation identifying the components of that payment.

58. Plaintiff does not characterize that deposit as establishing that all compensation obligations were satisfied or that a particular unpaid balance remains due.

59. On February 10, 2026, Friend received an updated Standard Form 50 identifying the personnel action as "REMOVAL," effective December 13, 2025.

60. The challenged decision deprived Friend of his restored FBI employment and resulted in a formal personnel record memorializing his removal from federal service.

## IV. COUNT I — FIRST AMENDMENT RETALIATION
## Against Patel in His Official Capacity

62. Plaintiff incorporates paragraphs 1–4 and 13–61 into this Count.

63. The First Amendment protects qualifying speech by public employees who speak as citizens on matters of public concern, subject to the government's legitimate interests as an employer. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

64. Speech made pursuant to an employee's official duties is treated differently from citizen speech. The inquiry concerns the employee's actual responsibilities and the circumstances of the speech. *Garcetti v. Ceballos*, 547 U.S. 410, 421–24 (2006).

65. Friend spoke as a private citizen, outside his assigned investigative duties, when he publicly discussed and criticized the FBI's handling of the pipe-bomb investigation. His commentary was not an assigned investigative report, an internal communication produced as part of his work, or an authorized statement on behalf of the FBI. He did not hold himself out as speaking for the agency, and the public setting and context distinguished his personal commentary from official FBI communications.

66. The content, form, and context of Friend's speech establish its public significance. He addressed an important, publicly known federal investigation through podcasts and other public commentary, raising concerns about the handling of evidence and the integrity and accountability of federal law enforcement. Those subjects concerned the public's interest in

the government's conduct rather than merely Friend's private employment interests.

67. Friend acknowledges legitimate governmental interests in protecting confidential information, preserving investigations, maintaining discipline, and ensuring effective law enforcement.

68. Friend nevertheless contends that those interests, properly balanced against the protected speech at issue, did not justify terminating him for the protected portions of his public criticism.

69. Protected criticism does not lose constitutional protection solely because agency leadership finds it unwelcome or its tone forceful. The applicable inquiry requires consideration of the actual speech and legitimate governmental interests under *Pickering*.

70. Patel subjected Friend to a materially adverse employment action by personally ordering his dismissal and removal from federal service.

71. Friend's protected public speech was a substantial or motivating factor in the removal. Patel's dismissal letter expressly relied on Friend's general podcast commentary, media appearances, and public discussion of the investigation. Plaintiff challenges the use of those protected citizen communications as grounds for termination, including the broader commentary identified in the letter rather than only the December 5, 2025 passage.

72. The sequence between the December 5, 2025 podcast appearance, the December 12, 2025 dismissal letter, and delivery of that letter on December 13, 2025 further supports the allegation of retaliatory causation.

73. Friend contends that the same removal would not have occurred absent the protected speech. See *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

74. Plaintiff challenges Patel's own decision and its implementation, rather than relying solely on Patel's supervisory position.

75. Plaintiff seeks an order setting aside the unconstitutional removal, restoring his employment subject to lawful eligibility requirements, and correcting the resulting personnel records. Compensation alone would not restore his employment or correct those records.

76. Plaintiff also seeks recovery of all unpaid compensation attributable to the challenged removal, including back pay, lost salary, allowances, differentials, and employment benefits, together with restoration of leave, retirement contributions, and service credit to the extent authorized by applicable law.

77. Plaintiff requests back pay and associated relief under the Back Pay Act, 5 U.S.C. § 5596, to the extent its requirements are satisfied and this Court has jurisdiction to award that relief, including statutory interest and any attorney's fees authorized by that provision.

78. Plaintiff seeks an accounting of compensation and benefits paid or restored following the August 26, 2025 settlement agreement and the December 2025 removal, including the January 30, 2026 payment of $163,674.40. Plaintiff requests recovery of any remaining amounts legally due, subject to required offsets and without duplicating amounts already paid.

79. Plaintiff requests reasonable attorney's fees, costs, and litigation expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412, including subsection (d) upon satisfaction of its eligibility and entitlement requirements and subsection (b) upon establishment of an applicable statutory or common-law basis.

**WHEREFORE**, Plaintiff, STEPHEN FRIEND, respectfully requests that the Court enter judgment against Defendant, KASHYAP PATEL, in his official capacity:

A. Declaring that the challenged removal violated the First Amendment to the extent it was imposed because of constitutionally protected citizen speech;

B. Setting aside the unconstitutional removal;

C. Ordering reinstatement to Plaintiff's Special Agent position at the Jacksonville Field Office, Daytona Beach Resident Agency, or an equivalent position, subject to lawful and constitutionally permissible eligibility requirements;

D. Ordering rescission or correction of the personnel records memorializing the unconstitutional removal, including the associated Standard Form 50;

E. Enjoining continued implementation of the unconstitutional removal;

F. Awarding all back pay and other unpaid compensation legally recoverable because of the challenged removal, including lost salary, allowances, differentials, and employment benefits, together with restoration of leave, retirement contributions, and service credit, pursuant to 5 U.S.C. § 5596 and

any other applicable authority, subject to this Court's jurisdiction and required offsets;

G. Alternatively awarding front pay in lieu of reinstatement if reinstatement is unavailable or inappropriate, to the extent authorized by applicable law and a waiver of sovereign immunity;

H. Ordering an accounting of compensation and benefits previously paid or restored, and payment or restoration of any remaining amounts legally due, without duplicate recovery;

I. Awarding interest to the extent expressly authorized by applicable law, including 5 U.S.C. § 5596(b)(2);

J. Awarding reasonable attorney's fees, costs, and litigation expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any applicable fee provision of 5 U.S.C. § 5596, upon satisfaction of the governing requirements; and

K. Granting such further relief as the Court finds appropriate.

Dated: October 1, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI
Florida Bar No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
Mount Dora, Florida 32757
Telephone: (352) 455-2928
**Lead Counsel for Plaintiffs'**

*/s/ Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892
**Co-Counsel for Plaintiffs'**

**CERTIFICATE OF SERVICE**

I certify that on 10.1.2026, I caused a true and correct copy of the foregoing to be filed via CM/ECF, which will serve all counsel of record.

*/s/ Anthony F. Sabatini*

**EXHIBIT 1**
December 12, 2025 dismissal letter signed by Kashyap P. Patel and delivered December 13, 2025.